UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THOMAS TATE and SHIREE     }
COOPER,                     }
                            }
     Plaintiffs,            }
                            }
v.                          }          CASE NO. 2:11-cv-3645-SLB
                            }
AMERICAN BANKERS            }
INSURANCE COMPANY OF        }
FLORIDA,                    }
                            }
     Defendant.             }

**MEMORANDUM OPINION**

This case is before the court on defendant American Bankers Insurance Company of

Florida's Motion for Summary Judgment. (Doc. 42.)[1] This is an action for breach of contract

arising after rain caused a dramatic rise in the water level at Lewis Smith Lake that damaged

plaintiffs' retaining wall and lake house. (*See* Doc. 1 at 23.)[2] Defendant denied plaintiffs'

claim on their insurance policy. (*Id*. at 24-26.) Although other counts were alleged, only

plaintiffs' claim for breach of contract remains, (Doc. 30), and for the reasons set forth

below, defendant's Motion for Summary Judgment on that claim is due to be granted.

---

[1]  Reference to a document number, ("Doc. ___"), refers to the number assigned to each document as it is filed in the court's record.

[2] Reference to a page number in a document, ("at ___"), refers to the page number assigned to each page in a document as it is filed in the court's record.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("[I]t is never enough simply to state that the non-moving party cannot meet its burden at trial.").

In deciding a motion for summary judgment, the court's function is not to "weigh the

evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. As the Supreme Court has recently reaffirmed, "[t]he evidence of the nonmovant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## STATEMENT OF FACTS[3]

Lewis Smith Lake rose nineteen[4] feet the week of March 8, 2011, and by the time Thomas Tate and Shiree Cooper ("plaintiffs") got a tip from Tate's cousin to check on their waterfront property, the flooding had damaged their house and retaining wall. (*See* Doc. 45-3 at 6; Doc. 45-2 (Tate Depo.) at 41-43.) On the 11th, Tate called J.R. Prewitt & Associates, previously a defendant in this case,[5] which told him that an insurance adjuster would call him back. (Doc. 45-2 at 45-46.) The callback came from Cathy Berry, who informed Tate that she "would be turning the process over to an outfit called Sweet Claims Adjustors." (*Id*. at 47.)

---

[3] As required when determining a motion for summary judgment, the court has construed the facts in the light most favorable to the non-moving parties. All disputed facts are resolved in their favor, and all reasonable inferences arising from those facts are drawn in their favor. *See Crawford v. Carroll*, 529 F.3d 961, 964 n.1 (11th Cir. 2008) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[4]Although it is wholly immaterial, plaintiffs used both nine and nineteen feet as figures in different documents. (*See* Doc. 1 at 23; Doc. 45 at 3 ¶ 2.) Nineteen feet is the correct figure. (*See* Doc. 45-3 at 4, 6.)

[5]J.R. Prewitt & Associates was dismissed by stipulation of the parties. (Doc. 11.)

The adjuster, Jeff Wolkart, inspected the property and filled out a Federal Emergency Management Agency (FEMA) Preliminary Report. (*See* Doc. 45-4.) At the bottom of the first page of the report are the adjuster's FCN number, a line for the date, and what appears to be a line for a signature, under which appears: "Jeff Wolkart," and under that, "American Bankers of Florida." (Doc. 45-4 at 1.) The report is dated March 17, 2011, and a stamp appears in the corner: "R. Garner, March 18, 2011." (*Id.*)

During his inspection, Wolkart told Tate that the next step in the claims process would be for Wolkart to get an engineer to survey the property and estimate what repairs would be needed, but that plaintiffs would have to wait because "half the United States [wa]s underwater" at that time, and everyone was busy. (Doc. 45-2 at 65:9-66:3.)

After Wolkart's inspection, (*see* Doc. 45-2 at 51:8-14), plaintiffs received a March 16, 2011 letter from defendant American Bankers Insurance Company which states:

> Your Standard Flood Insurance Policy and the Federal Law requires [sic] that a formal Proof of Loss be filed within sixty (60) days from the date of loss. If the Proof of Loss is not received by May 08, 2011, the terms and conditions of the policy would be violated and your claim could be denied. A copy of a Proof of Loss is enclosed for your use. We have assigned Sweet Claims Service . . . to adjust your loss. They will appraise the damages and assist you in completing the Proof of Loss.

(Doc. 47 at 14; Doc. 45-2 at 47:22-48:11, 50:5-16.) It is signed "Ron Garner." (Doc. 47 at 14.) However, no proof of loss form was enclosed. (Doc. 45-2 at 48-49.)

Tate called Wolkart to ask about the letter, and Wolkart told him that estimated repair costs were necessary to complete the Proof of Loss, and that Wolkart would be generating

those numbers. (*Id*. at 54:9-17.) Marvin Aikens from Donan Engineering inspected the

property on March 24th, (*id*. at 67),[6] and told Tate to wait for a report that he would generate,

(*id*. at 71). The report is dated March 31, 2011, (*see* Doc. 45-3), and plaintiffs received it

about a week after that, (Doc. 45-2 at 71).

At this time, Tate felt like he "was in the hands of professionals" and that "the process

was taking place." (*Id*. at 72.) Someone in this "chain of experts" advised Tate to hire a

qualified contractor to visit and make a repair estimate, and Tate employed Rast

Construction. (*Id*. at 72-73.) An agent of Rast Construction and Doug Warnat, an expert in

the field, visited the property sometime in the middle of April, just before massive tornadoes

devastated parts of north and central Alabama. (Doc. 45-2 at 73-75; *see also* Campbell

Robertson and Kim Severson, *Storms' Toll Rises as Scale of Damage Becomes Clear*, N.Y.

TIMES, April 29, 2011, http://www.nytimes.com/2011/04/30/us/30storm.html?smid=pl-share

(reporting that President Obama "declared a major disaster in Alabama . . . , an action that

makes federal financing available for individuals, businesses and state and local

governments")).[7] Rast Construction sent plaintiffs a "lump sum estimate" of the damages

---

[6]It seems that defendant requested this inspection with plaintiffs' permission but not at
their behest. (*See* Doc. 45-5; Doc. 45-2 at 67:8-68:1.)

[7]The court notes this not because plaintiffs' lake property suffered additional damage (it
did not, (Doc. 45-2 at 74)), but to offer context as to the state of the construction and insurance
industries at the end of April 2011. The article reports that "[i]nsurance claims are already
growing exponentially [as of April 29, 2011], and could approach $1 billion, said Ragan Ingram,
chief of staff at the Alabama Department of Insurance."

($334,000.00), dated April 28, 2011, which Tate forwarded along to "whoever in the chain had told [him] to get a quote from a general contractor," probably Wolkart. (Doc. 45-10; Doc. 45-2 at 78-79.) Wolkart advised Tate that Wolkart would have to send the estimate to another person, perhaps someone in the "claims department." (Id. at 80.) On May 13, 2011, Tate talked to Doug Warnat, who told him that the quote from Rast and the letter from the engineer (presumably Marvin Aikens from Donan Engineering) "would be helpful in [Warnat's] submission for [plaintiffs'] claim purposes." (Doc. 45-2 at 81; *see also* Doc. 45-6.) At Tate's direction, Warnat memorialized this conversation in a May 16, 2011 letter that he forwarded that day by e-mail to Wolkart. (Doc. 45-2 at 81; Doc. 45-7.) In the e-mail, Warnat states that he "would like to discuss this with you [(Wolkart)] at your convenience," and "reemphasize[s]" that "proper overall repair must include professionally repairing the damaged supporting slope." (Doc. 45-7.)

Wolkart filled out a Flood Damage Closing Report, and Sweet Claim Service Inc. received it on May 23, 2014. (*See* Doc. 45-11 at 1 (stamp).) The report was then apparently received by an "R. Garner" the next day. (*Id*. (other stamp).) Tate received it about three days after that. (*See* Doc. 45-2 at 83-84.) The report purports to enclose, among other things, estimates and a proof of loss. (*See* Doc. 45-11 at 1.) Also, it notes that "[t]he insured has indicated that he has consulted his own engineer and contractor. . . . The insured was also told he could secure a detailed contractor[']s estimate along with a complete engineer[']s report, at the insured[']s expense, and submit them for possible consideration." (*Id*. at 2.)

Although the document filed with the court does not include the purported enclosures, the estimates submitted with the report assessed the total repair cost to be $4,756.00. (*See* Doc. 45-2 at 84-85.)

"Flabbergasted" by this estimate, Tate called Wolkart and complained. (Doc. 45-2 at 84.) Wolkart told him that the sum "was all that came back from this approval process," but that "if [Tate would] go ahead and fill out that Proof of Loss, we[8] can apply for an appeal." (*Id.*) At this point, Tate was still unsure as to what exactly a proof of loss was. (*Id.*)

On June 21, 2011, plaintiffs received a letter from defendant denying their claim as falling under an exclusion in their policy for "loss to property caused directly by earth movement even if the earth movement is caused by flood," signed by Ron Garner. (Doc. 45-2 at 88; Doc. 45-8 at 1-2.)

Tate executed a sworn proof of loss on July 6, 2011. (*See* Doc. 45-14; *see also* Doc. 43 at 17 n.22 (noting that although it is irrelevant to the disposition of the case, defendant only received a proof of loss after litigation commenced).)

As of Tate's May 2012 deposition, plaintiffs had spent around $127,500.00 out of pocket on repairs. (Doc. 45-2 at 98.)

Plaintiffs' insurance policy with defendant is a National Flood Insurance Program

---

[8]It is ambiguous in Tate's deposition whether "we" means "Tate and Cooper" or "Tate, Cooper, and Wolkart." Shortly after this statement, Tate testified that Wolkart told him "you'll have to fill out the Proof of Loss with the amount that I got approved, and we'll go through the appeal process." (Doc. 45-2 at 86.) Later in that same paragraph, plaintiff refers to Wolkart as "my expert." (*Id*. at 87.)

Standard Flood Insurance Policy, codified at 44 C.F.R. Pt. 61, App. A(1). (*See* Doc. 43 at 5

¶ 3 (citing Doc. 43-2 ¶ 7); Doc. 45 at 2 ¶ 3.) For summary judgment purposes, the following

provisions of the policy are the most relevant:

> VII. General Conditions
> > . . .
> > J. Requirements in Case of Loss
> > In case of a flood loss to insured property, you must:
> > > 1. Give prompt written notice to us;
> > > . . .
> > > 4. Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:
> > > > . . .
> > > > f. Specifications of damaged buildings and detailed repair estimates;
> > > . . . .
> > > 5. In completing the proof of loss, you must use your own judgment concerning the amount of loss and justify that amount.
> > > . . .
> > > 7. The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.
> > > . . .
> > > 9. At our option, we may accept the adjuster's report of the loss instead of your proof of loss. . . . You must sign the adjuster's report.
> > > . . .
> > R. Suit Against Us
> > You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy.
> > . . .
> VII. What Law Governs
> This policy and all disputes arising from the handling of any claim under the

policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, et seq.), and Federal common law.

44 C.F.R. Pt. 61, App. A(1).

## ANALYSIS

Courts must observe all conditions defined by Congress for the payment of U.S. Treasury funds pursuant to the Appropriations Clause. *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947); *Flick v. Liberty Mutual Fire Ins. Co.*, 205 F.3d 386, 391 (9th Cir. 2000). Because the federal government pays claims under the Standard Flood Insurance Policy with U.S. Treasury funds, courts must strictly comply with the conditions precedent to payment contained within the policy. *Shuford v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1343 (11th Cir. 2007); *Sanz v. U.S. Sec. Ins. Co.*, 328 F.3d 1314, 1318 (11th Cir. 2003). Article VII(R) of the Standard Flood Insurance Policy states that an insured must meet all requirements of the policy before he can sue to recover money, so the failure to submit a timely proof of loss divests an insured of the right to sue. *Mancini v. Redland Ins. Co.*, 248 F.3d 729, 735 (8th Cir. 2001); *DuBose v. State Farm Ins. Co.*, 2007 WL 4463561 at *4 (S.D. Ala. Dec. 14, 2007); 44 C.F.R. Pt. 61, App. A(1). Additionally, "all persons are charged with knowledge of the published federal law," (Doc. 43 at 16, citing *Merrill*, 332 U.S. at 384-85), and persons participating in federal programs have a legal duty to familiarize themselves with those programs' requirements, *Heckler v. Comm. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 64 (1984).

Defendant's argument is simple: Article VII(J)(4) of the Standard Flood Insurance Policy is dispositive of this case. (Doc. 43 at 4.) Plaintiffs had until May 8, 2011, to submit a proof of loss under that provision, and they failed to do so. (*Id*. at 16-17.) That submission was a condition precedent to defendant's performance under the policy. (*Id*. at 14, citing *Sanz v. U.S. Sec. Ins. Co.,* 328 F.3d 1314, 1317-19 (11th Cir. 2003).) Plaintiffs are not barred from recovery merely by federal common law on contracts. "[B]ecause benefits under the National Flood Insurance Program are paid from the federal treasury," *Shuford v. Fidelity National Property and Casualty Insurance Company*, 508 F.3d 1337, 1343 (11th Cir. 2007), the Appropriations Clause of the United States Constitution acts as a backstop against any estoppel or constructive waiver arguments. (See Doc. 43 at 19 ("[T]he general doctrines of waiver and estoppel do not apply when the insurer is an agent of the United States."); *id.* at 20-25, citing, e.g., *Shuford*, 508 F.3d 1337.)

Plaintiffs respond with commendable constructive waiver and estoppel arguments,[9] given the facts of their case (which show no egregious misconduct on anyone's part), but *Shuford* forecloses all of plaintiffs' arguments. Plaintiffs do not cite *Shuford*, much less

---

[9]In their response to defendant's Motion for Summary Judgment, plaintiffs argue that their failure to file a timely proof of loss does not preclude recovery because:
1. American Bankers constructively waived the proof of loss requirement by not basing the denial of insurance benefits on plaintiffs' failure to file a timely proof of loss; and
2. American Bankers is estopped from asserting the plaintiffs' failure as a defense since adjustors hired by American Bankers told plaintiffs to delay filing the proof of loss, and American Bankers had all the information that would have been included in the proof of loss before the deadline for filing.

attempt to distinguish it. Instead, with one exception,[10] *Quesada v. Director, Federal Emergency Management Agency*, 577 F. Supp. 695 (S.D. Fla. 1983), they rely exclusively on cases from outside the Eleventh Circuit. (*See* Doc. 45.) Unfortunately for plaintiffs, *Shuford*'s holding is binding on this court.

*Shuford* holds: "[Defendant] was entitled to summary judgment against [the plaintiff's] complaint for breach of contract because [the plaintiff] failed to file a proof of loss within [the deadline]," *Shuford*, 508 F.3d at 1342. "Equitable estoppel is *not an available argument* for [the plaintiff]," *id.* (emphasis added), because a "suit for benefits under the National Flood Insurance Program raises the same concerns, under the Appropriations Clause, as a suit against a governmental entity." *Id.* at 1343. Even if the adjustor's statements to plaintiffs advising them to delay filing their proof of loss resulted in plaintiffs' failure to file a timely proof of loss, (Doc. 45 at 4), and even though the denial letter from defendant erroneously stated that plaintiffs could file suit within the year, (Doc. Doc. 45 at 7), those actions cannot estop defendant from raising the defense of plaintiffs' failure to file a timely proof of loss. Even if estoppel was an available argument, *Shuford* holds that a defendant's act of failing to give information or giving erroneous information about the proof of loss requirement does not rise to the level of egregious conduct. *Id.*

Additionally, defendant did not waive its defense by sending a denial letter that does

---

[10]Because the court is applying Florida law in *Nu-Air Manufacturing Company v. Frank B. Hall & Company of New York*, 822 F.2d 987, 993 (11th Cir. 1987), at least for the proposition for which plaintiffs cite it, it need not be counted.

not mention plaintiffs' failure to file a proof of loss as a basis for denying plaintiffs'

insurance claim. (Doc. 45 at 6.) *Shuford* unequivocally holds that the court will not recognize

a constructive waiver argument: "In *Sanz* [*v. U.S. Sec. Ins. Co.*, 328 F.3d 1314, 1319–20

(11th Cir.2003),] we declined to recognize a constructive waiver . . . . We held that failure

to file a proof of loss bars recovery absent an express written waiver of the proof-of-loss

requirement by the Administrator." *Shuford*, 508 F.3d at 1343. It is also irrelevant that an

adjustor and plaintiffs' contractor submitted estimates of the cost of repair to defendant

before the deadline for submitting a proof of loss, (Doc. 45 at 11), because a proof of loss

form must be submitted by the deadline–not just the information contained within it.

## CONCLUSION

Plaintiffs' breach of contract claim fails because plaintiffs did not submit a timely

proof of loss. Consistent with *Shuford*, defendant's Motion for Summary Judgment is due

to be granted. An order granting defendant's Motion for Summary Judgment will be entered

contemporaneously with this Memorandum Opinion.

**DONE** this 16th day of September, 2014.

SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE